# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **JOYCE YANG CORPORATION,** *Plaintiff* | § § § | |
| v. | § § § | No. 1-24-CV-00628-DII |
| **YI-DING INTERNATIONAL HOLDING CO. LIMITED, ET AL.,** *Defendants* | § § § § | |

### REPORT AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE UNITED STATES DISTRICT JUDGE

Before the Court is Defendant Yi-Ding International Holding Company's ("Yi-Ding") Motion to Dismiss and all related briefing. Dkt. 20. After reviewing these filings and the relevant case law, the undersigned recommends that the District Judge deny Yi-Ding's motion.

## I.   BACKGROUND

Plaintiff Joyce Yang Corporation d/b/a Coco's Café ("JYC") owns and operates Coco's Café, a Taiwanese food and bubble tea shop that was established in Austin in 1999 and opened its Guadalupe Street location in 2001. Dkt. 18-1, at 1. Coco's Café has used its mark and name in Austin since 1999. *Id.* JYC owns two registrations with the United States Patent and Trademark Office (USPTO), one for the name COCO'S CAFÉ and one for the Coco's Café logo. U.S. Patent Nos. 5,583,395 & 5,625,101; Dkt. 18-1, at 4; Dkt. 18-4, at 2, 4.

1

Defendant Yi-Ding is a Samoan corporation with its principal place of business in Taiwan. Dkt. 20-1, at 1. Yi-Ding does not conduct business in Texas. Dkt. 20-1, at 1, 2 (stating that Yi-Ding has no offices, employees, directors, officers, property, advertising, bank accounts, or agent in Texas, and that Yi-Ding is not registered to do business with the Texas Secretary of State). However, Yi-Ding *does* own a portfolio of United States trademarks associated with the bubble tea chain CoCo ("the CoCo marks"). U.S. Patent Nos. 3,857,890; 4,564,049; 5,226,353; 5,258,872; & 5,566,345; *id.* at 2. Yi-Ding also licenses use of the CoCo marks worldwide, including to CoCo bubble tea shops in California, Colorado, Florida, Massachusetts, Michigan, New Jersey, New York, Utah, and Washington. Dkt. 20-2, at 2.

The subject of this lawsuit is a CoCo shop set to open on Austin's Guadalupe Street at an address that is less than one mile from Coco's Café. Dkt. 18-1, at 5. The Guadalupe Street CoCo store uses the CoCo marks pursuant to a series of licensing agreements between Yi-Ding, its licensees, and its sublicensees. First, Yi-Ding issued a non-exclusive license to use the CoCo marks to the California-based Infinilush Company Limited ("Infinilush"). Dkt. 20-1, at 2-3. That license gave Infinilush the right to use and sublicense the use of the CoCo marks. *Id.* Pursuant to the Yi-Ding/Infinilush license, Infinilush entered into a franchise agreement with sublicensee Newtopia LLC ("Newtopia"), granting Newtopia the right to own and operate a CoCo store in Austin under Yi-Ding's CoCo marks. Dkt. 20-2, at 2.

In this suit, JYC alleges that the CoCo marks to be used in connection with the new Guadalupe Street location—COCO FRESH TEA & JUICE, often shortened to

2

COCO—infringe its own marks. Dkt. 15, at 6. Accordingly, JYC sued Yi-Ding, Infinilush, and Newtopia (collectively, "Defendants"), alleging violations of 15 U.S.C. §§ 1114(1) and 1125(a), as well as bringing claims of common-law trademark infringement, unfair competition, and unjust enrichment. Dkt. 15. JYC alleges that Defendants' use of the allegedly infringing marks is likely to confuse customers and allow Defendants to unfairly benefit from Coco's Café's accumulated goodwill. Dkt. 15, at 10, 11.

The undersigned issued a preliminary injunction enjoining Newtopia from displaying or using the disputed marks. Dkt. 18, at 26-27. Yi-Ding now moves to dismiss the claims against it for lack of personal jurisdiction. Dkt. 20.

## II.   LEGAL STANDARD

The Federal Rules of Civil Procedure allow a defendant to assert lack of personal jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(2). On such a motion, "the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). The court may determine the jurisdictional issue "by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Id*. But when, as here, the Court rules on the motion without an evidentiary hearing, the plaintiff need only present a *prima facie* case that personal jurisdiction is proper; proof by a preponderance of the evidence is not required. *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008). Uncontroverted allegations in a plaintiff's complaint must be taken as true, and

conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor. *Id.* Nevertheless, a court need not credit conclusory allegations, even if uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (per curiam).

### III. DISCUSSION

"A federal district court may exercise personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004) (internal citations removed). Because the "Texas long-arm statute has been interpreted as extending to the limits of due process," "the jurisdictional analysis is collapsed into one inquiry as to whether jurisdiction comports with federal due process." *Turner v. Harvard MedTech of Nevada, LLC*, 620 F. Supp. 3d 569, 574 (W.D. Tex. 2022). Federal due process requires the satisfaction of two elements before a federal court may properly exercise jurisdiction over a nonresident: "(1) the nonresident must have minimum contacts with the forum state, and (2) subjecting the nonresident to jurisdiction must be consistent with traditional notions of fair play and substantial justice." *Freudensprung*, 379 F.3d at 343 (internal citations removed).[1]

---

[1] This Court may exercise *general* personal jurisdiction over Yi-Ding if its "affiliations with [Texas] are so 'continuous and systematic' as to render [it] essentially at home in [Texas]." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)). In its motion, Yi-Ding asserts that is not subject to general jurisdiction in this Court because it is not a resident of the United States and does not conduct business in Texas. Dkt. 20, at 5. In its response, JYC does not argue

4

This Court may exercise specific personal jurisdiction over Yi-Ding if: (1) Yi-Ding has minimum contacts with the forum state, i.e., if it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) JYC's cause of action arises out of or results[2] from Yi-Ding's forum-related contacts; and (3) the exercise of personal jurisdiction is fair and reasonable. *Ward v. Rhode*, 544 F. App'x 349, 352 (5th Cir. 2013) (citing *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009)). The specific-jurisdiction inquiry thus "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quotation omitted).

Yi-Ding argues that it is not subject to specific jurisdiction because it has no contacts with Texas: it is not party to the franchise agreement between Infinilush and Newtopia, did not direct either party to enter that agreement, and did not control where Newtopia chose to open its franchise. Dkt. 20, at 8. Additionally, Yi-Ding asserts that there is no connection between JYC's claims and Yi-Ding's activities, since merely owning and licensing the CoCo marks is "insufficient to support specific jurisdiction." *Id.*

JYC responds that Yi-Ding is subject to personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2). Dkt. 32, at 5. Rule 4(k)(2) "permits a federal court to

---

that Yi-Ding is subject to general personal jurisdiction. *See* Dkt. 32. Accordingly, the undersigned will evaluate whether Yi-Ding is subject to specific personal jurisdiction.

[2] The Fifth Circuit has sometimes framed this inquiry as one into whether the "'lawsuit arises from or relates to the defendant's contact with the forum state.'" *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 871 (5th Cir. 2000) (quoting *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999)).

exercise personal jurisdiction in a federal question case over a defendant who is not within the reach of any state's long-arm statute when doing so would not violate due process or federal law." 4 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1068.1 (4th ed. 2024); *see World Tanker Carriers Corp. v. M/V Ya Mawlaya*, 99 F.3d 717, 720 (5th Cir. 1996). The Rule provides:

> If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

Fed. R. Civ. P. 4(k)(2). Essentially, the Rule makes the United States the applicable forum for the minimum-contacts analysis under general and specific personal jurisdiction. *See Patterson v. Aker Sols. Inc.*, 826 F.3d 231, 234 (5th Cir. 2016). Its purpose is to "close[] a loophole" by which "a non-resident defendant who did not have 'minimum contacts' with any individual state sufficient to support exercise of jurisdiction, but did have sufficient contacts with the United States as a whole, could escape jurisdiction in all fifty states." *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1414 (Fed. Cir. 2009).

"The court uses the same legal standards developed in the Fourteenth Amendment context—i.e., the minimum contacts analysis in the assertion of specific jurisdiction—but the United States is the relevant forum." *Fintech Fund, FLP v. Horne*, 327 F. Supp. 3d 1007, 1022 (S.D. Tex. 2018). The plaintiff has the initial burden to "plead and prove the requisite contacts with the United States and plead Rule 4(k)(2)'s applicability ... but it [has] no burden to negate jurisdiction in every

6

state." *Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494, 499 (5th Cir. 2018). Once the plaintiff meets that burden through *prima facie* evidence, the burden shifts to the defendant to "affirmatively establish that the court lacked personal jurisdiction under 4(k)(2) because there was a state where its courts of general jurisdiction could properly exercise jurisdiction over it" or that it has insufficient contacts with the United States as a whole. *Id.* (citing *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 650 (5th Cir. 2004)).

In sum, a federal court may exercise personal jurisdiction under Rule 4(k)(2) if "(1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (3) the exercise of jurisdiction comports with due process." *Touchcom*, 574 F.3d at 1410 (citing *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De Equip. Medico*, 563 F.3d 1285, 1293-94 (Fed. Cir. 2009)); *see MWK Recruiting, Inc. v. Jowers*, No. 1:18-CV-444-RP, 2019 WL 7761445, at *8 (W.D. Tex. July 29, 2019) (adopting this test). Because there is no dispute that JYC's trademark claims arise under federal law[3] and because Yi-Ding has not conceded to jurisdiction in another state,[4] the Court has personal jurisdiction

---

[3] The Supreme Court held in *Christianson v. Colt Industries Operating Corporation* that jurisdiction under 28 U.S.C. § 1338(a) extends to cases "in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." 486 U.S. 800, 808-09 (1988). While this case concerns trademarks, federal law also creates the cause of action here: JYC alleges violations of 15 U.S.C. §§ 1114(1) and 1125(a).

[4] *See* Dkt. 20; Dkt. 38.

7

under Rule 4(k)(2) if Yi-Ding has sufficient ties with the United States to satisfy due process. *Adams*, 364 F.3d at 651.

Yi-Ding has sufficient minimum contacts with the United States to be subject to personal jurisdiction in this Court. First, Yi-Ding has purposefully availed itself of the privileges of conducting activities in the United States. *See Ward*, 544 F. App'x at 352 (setting out the specific-jurisdiction test). As evidence of Yi-Ding's United-States contacts, JYC cites Yi-Ding's ownership of the CoCo marks. Dkt. 32, at 6. The Federal Circuit has found that obtaining a United States patent constitutes purposeful availment for the purposes of minimum contacts. *See Touchcom*, 574 F.3d at 1416. In *Touchcom*, the Federal Circuit held that a Canadian law firm that obtained a United States patent for its client thereby had sufficient minimum contacts with the United States for the Court to exercise personal jurisdiction under Rule 4(k)(2). *Id.* ("[O]ne who has sought and obtained a property interest from a U.S. agency has purposefully availed itself of the laws of the United States."). It stands to reason that Yi-Ding's *ownership* and subsequent sublicensing of a United States mark—an even less attenuated contact, since the defendant in *Touchcom* was a law firm and not the patent or trademark owner—also suffices to subject Yi-Ding to personal jurisdiction in the United States. *See id.*; *see also Genetic Veterinary Scis., Inc. v. LABOKLIN GmbH & Co.*, 933 F.3d 1302, 1311 (Fed. Cir. 2019) (finding the minimum-contacts prong satisfied where defendant sent a cease-and-desist letter and entered into commercial sublicenses for its patent).

8

JYC's argument that Yi-Ding cannot collect the rights associated with its United States trademark ownership while avoiding the attendant liabilities is well taken. Dkt. 32, at 9. In support of Yi-Ding's argument that its trademark ownership is insufficient to subject it to personal jurisdiction in this Court, Yi-Ding points out a series of infirmities in JYC's cited cases. Dkt. 38, at 6-9; *see Plixer Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1 (1st Cir. 2018); *Monster Cable Prods., Inc. v. Euroflex S.R.L.*, 642 F. Supp. 2d 1001 (N.D. Cal. 2009); *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338 (5th Cir. 2002). The undersigned notes that to the extent the courts in those cases found the defendants' trademark-related contacts insufficient to confer personal jurisdiction, none of those defendants *owned* a United States trademark or patent. *See Plixer Int'l*, 905 F.3d at 5-6, 11 (noting that the defendant's U.S. trademark *application* did not "tip the scales" in favor of jurisdiction, but affirming jurisdiction on other grounds); *Monster Cable*, 642 F. Supp. 2d at 1006 (finding that a defendant's *application* for trademark protection constituted a substantial contact); *Quick Techs.*, 313 F.3d at 344-45 (affirming dismissal where the defendant filed an *opposition to the plaintiff's trademark application* and an *intent-to-use application* with the USPTO). As owner of the CoCo marks, Yi-Ding has ultimately authorized and benefited from their extensive use in the United States. *See Turner v. HMH Pub. Co.*, 380 F.2d 224, 229 (5th Cir. 1967) (recognizing inurement through licensees).

Additionally, JYC points to Yi-Ding's authorization of the use of the CoCo marks in United States commerce through its licensees and sublicensees, as well as CoCo's "national advertising," "rendering of robust support programs for its licensees

9

and franchisees," and "attendance at U.S. trade shows" as evidence that Yi-Ding has purposefully availed itself of the United States. Dkt. 32, at 7-8; Dkt. 15, at 7-8. Yi-Ding disputes these allegations. Dkt. 20-3, at 1. However, resolving this dispute in JYC's favor, the undersigned finds that these contacts, in addition to Yi-Ding's United States trademark ownership, further support the exercise of personal jurisdiction here under Rule 4(k)(2). *See Walk Haydel*, 517 F.3d at 241 (stating that on a 12(b)(2) motion, the court should construe all disputed facts in the plaintiff's favor).

JYC's cause of action arises out of Yi-Ding's forum-related contacts. *See Ward*, 544 F. App'x at 352 (setting out the specific-jurisdiction test). JYC alleges that Yi-Ding's CoCo marks infringe its own marks. Dkt. 15, at 6. Therefore, JYC's cause of action arises out of Yi-Ding's ownership and licensing of the CoCo marks.

Finally, exercising personal jurisdiction over Yi-Ding is "fair and reasonable" and comports with "fair play and substantial justice." *Ward*, 544 F. App'x at 352; *Freudensprung*, 379 F.3d at 343. In determining whether exercising jurisdiction comports with "fair play and substantial justice," courts consider five factors: "(1) the burden on the defendant, (2) the forum's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the states in furthering fundamental substantive policies." *Synthes*, 563 F.3d at 1299 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

Since Yi-Ding is a Samoan corporation with its principal place of business in Taiwan, the burden of requiring it to travel to Texas to litigate this dispute is not small. Dkt. 20-1, at 1. However, Yi-Ding has presented no evidence that litigating this suit in Texas is more burdensome than litigating it in any other United States jurisdiction. *See Bandspeed, PLLC v. Realtek Semiconductor Corp.*, No. 1:20-CV-765-LY, 2022 WL 21898041, at *4 (W.D. Tex. Oct. 13, 2022) (noting that it was not unduly burdensome to call the Taiwanese defendant into court in Austin where the defendant had not presented evidence that litigating in the Western District of Texas would be more burdensome than any other United States district and had retained local counsel for the purposes of the litigation). The burden on Yi-Ding is not so high as to defy notions of fair play and substantial justice here. *See id.*

Further, the forum's and plaintiff's interests in this dispute are significant. The United States has an interest in adjudicating this suit because it is based on a United States trademark and the alleged infringement is occurring in the United States. As in *Bandspeed*, the plaintiff's interest in obtaining relief in this forum is strong. *Id.* If Yi-Ding is not subject to jurisdiction in this forum or any other United States forum, JYC will have no opportunity for relief. *See id.* Relatedly, because the claims in this case arise under United States trademark law, the United States is the most efficient forum in which to adjudicate this dispute. *See id.* Finally, because the United States has an interest in "protecting the intellectual property of American businesses" like Coco's Café, exercising jurisdiction would not offend the states' shared interest in furthering fundamental substantive policies. *Id.*

11

Because Yi-Ding has sufficient minimum contacts with the United States as a whole to support the exercise of personal jurisdiction under Rule 4(k)(2), and because doing so would comport with due process, Yi-Ding's motion to dismiss, Dkt. 20, should be denied. The undersigned further notes that to decline the exercise of personal jurisdiction over Yi-Ding would mean that Yi-Ding and other similarly situated defendants "would not be subject to jurisdiction anywhere in the United States for a case arising under federal patent [here, trademark] laws." *Bandspeed*, 2022 WL 21898041, at *4 (W.D. Tex. Oct. 13, 2022); *see Touchcom*, 574 F.3d at 1414 (describing Rule 4(k)(2)'s purpose to close that jurisdictional "loophole").

## IV. RECOMMENDATION

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that the District Court **DENY** Defendant Yi-Ding's Motion to Dismiss, Dkt. 20.

**IT IS FURTHER ORDERED** that this case is **REMOVED** from the docket of the undersigned and **RETURNED** to the docket of the Honorable District Judge.

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen days after

the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED September 25, 2024.

DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE